UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABOUBACAR DIAWARA,

Plaintiff,

-against-

Civil Action No. ___________
(To be assigned by the Court)

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

COMPLAINT FOR VIOLATIONS OF THE
FAIR CREDIT REPORTING ACT
JURY TRIAL DEMANDED

## INTRODUCTION

1. Plaintiff Aboubacar Diawara brings this action under the Fair Credit Reporting Act (“FCRA”), 15 U.S.C. § 1681 et seq., arising from Defendant Experian Information Solutions, Inc.’s reporting and reinvestigation of inaccurate delinquency information concerning two federal student-loan tradelines associated with the United States Department of Education and serviced by Nelnet.

2. Experian reported both tradelines as containing serious payment delinquencies, including a 90-day-late payment status for February 2026, even though Plaintiff was continuously covered by approved Pay As You Earn (“PAYE”) income-driven repayment determinations requiring monthly payments of $0 during the relevant period.

3. Plaintiff does not allege that the underlying student-loan principal had been fully repaid. Rather, Plaintiff alleges that no monthly payment was past due during the relevant period because his approved payment obligation was $0 and the successive PAYE approval periods provided continuous coverage without a payment gap.

4. Plaintiff disputed the delinquency reporting with Experian and supplied supporting information showing his approved repayment status, $0 required monthly payment, and absence of any past-due amount. Nevertheless, Experian failed to correct or delete the disputed delinquency information and continued reporting the two tradelines as potentially negative.

5. Experian’s conduct damaged Plaintiff’s apparent creditworthiness and caused him financial injury, delayed credit opportunities, frustration, inconvenience, expenditure of substantial time and effort, and emotional distress. Plaintiff seeks all relief authorized by the FCRA, including actual damages, statutory and punitive damages where permitted, costs, and any declaratory or equitable relief available under applicable law.

## PARTIES

6. Plaintiff Aboubacar Diawara is a natural person who resides in New York County, New York. Plaintiff is a “consumer” as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant Experian Information Solutions, Inc. (“Experian”) is a corporation that regularly assembles, evaluates, maintains, and furnishes consumer credit information to third parties for monetary compensation. Experian conducts substantial business in New York and throughout the United States and is a “consumer reporting agency” as defined by 15 U.S.C. § 1681a(f).

8. At all relevant times, Experian prepared and maintained credit information concerning Plaintiff, including information about the two Department of Education/Nelnet tradelines at issue in this action.

9. Experian acted through its officers, employees, agents, representatives, contractors, and automated systems in performing the conduct alleged in this Complaint. Those persons and systems acted on Experian's behalf and within the scope of their respective authority or responsibilities.

## JURISDICTION AND VENUE

10. This action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Accordingly, this Court has federal-question subject-matter jurisdiction under 28 U.S.C. § 1331 and jurisdiction under 15 U.S.C. § 1681p, which authorizes an action to enforce liability under the FCRA in an appropriate United States district court without regard to the amount in controversy.

11. This Court has personal jurisdiction over Experian because Experian regularly conducts consumer-reporting business in New York, maintains and furnishes credit information concerning New York residents, and directed the credit reports, dispute procedures, reinvestigation results, and other communications at issue to Plaintiff in New York.

12. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff received and reviewed the challenged Experian reports in this District, submitted his disputes from this District, received Experian's reinvestigation communications in this District, and experienced the resulting injury in this District.

13. Plaintiff resides in New York County, which is located within the Southern District of New York.

14. This action is timely under 15 U.S.C. § 1681p because Plaintiff discovered the alleged violations in 2026 and commenced this action within two years after discovering them and within five years after their occurrence.

## GENERAL FACTUAL ALLEGATIONS

15. Plaintiff has federal student loans associated with the United States Department of Education and serviced by Nelnet.

16. Experian maintains two separate tradelines in Plaintiff's credit file concerning those student loans. The tradelines are identified in Plaintiff's Experian reports as Department of Education/Nelnet accounts.

17. During the period relevant to this action, Plaintiff participated in the Pay As You Earn ("PAYE") income-driven repayment program.

18. Under Plaintiff's approved PAYE determinations, his required monthly payment was $0 for each applicable repayment period.

19. Plaintiff received successive PAYE approvals. The second approval was issued before the first approval period ended, thereby providing continuous repayment coverage without a gap between the approved periods. A true copy of Nelnet's PAYE/IDR account-status documentation dated March 28, 2026, is attached as Exhibit D.

20. Because Plaintiff's required monthly payment was $0 throughout the relevant period, Plaintiff did not fail to make any payment that was contractually due during that period.

21. Nelnet's account information and billing documentation reflected that Plaintiff's accounts were current, that no payment was past due, and that Plaintiff was not required to make a payment during the relevant PAYE period. A true copy of Nelnet's April 2026 billing statement showing a $0 regular monthly payment, a $0 past-due amount, and a $0 current amount due is attached as Exhibit C.

22. The existence of an unpaid student-loan principal balance did not mean that Plaintiff had a past-due payment. The accuracy dispute at issue concerns Experian's reporting of payment delinquency—not the existence or amount of the underlying loan principal.

23. Despite Plaintiff's approved $0 payment obligation and the absence of a past-due payment, Experian reported materially adverse payment-history information on both tradelines, including escalating delinquency designations culminating in a 90-day-late designation for February 2026.

24. Reporting Plaintiff as 30, 60, or 90 days late represented that Plaintiff had failed to make one or more required payments. That representation was inaccurate or, at minimum, materially misleading because no payment greater than $0 was due during the reported delinquency period.

25. The inaccurate or materially misleading delinquency designations made Plaintiff appear to creditors and other users of consumer reports to have failed to satisfy his student-loan payment obligations when due.

26. Plaintiff brings this action against Experian for its own consumer-reporting, accuracy, and reinvestigation conduct. Plaintiff does not presently assert a claim in this action against Nelnet or the United States Department of Education.

FIRST DEPARTMENT OF EDUCATION/NELNET TRADELINE

27. The first disputed tradeline is a Department of Education/Nelnet student-loan account appearing in Plaintiff's Experian credit file (the "First Nelnet Tradeline").

28. The First Nelnet Tradeline is one of two separate Department of Education/Nelnet tradelines reported by Experian concerning Plaintiff.

29. During the period reported by Experian as delinquent, the First Nelnet Tradeline was covered by Plaintiff's approved PAYE repayment status, under which Plaintiff's required monthly payment was $0.

30. Plaintiff did not miss a required payment on the First Nelnet Tradeline during the applicable PAYE period because no payment greater than $0 was contractually due.

31. Nevertheless, Experian reported the First Nelnet Tradeline as 90 days late for February 2026 and presented the account as containing potentially negative payment-history information. A true copy of Experian's August 10, 2026 report concerning the First Nelnet Tradeline is attached as Exhibit A.

32. A 90-day-late designation ordinarily communicates that a consumer failed to make a required payment for approximately three consecutive monthly payment periods. That designation was inaccurate or materially misleading as applied to Plaintiff because his approved required payment remained $0 throughout the relevant period.

33. Plaintiff's successive PAYE approvals covered the relevant months without an interruption that would have created a past-due monthly payment.

34. Nelnet's documentation concerning Plaintiff's repayment status showed that the account was current, that Plaintiff had no past-due payment, and that no payment was required during the applicable PAYE period.

35. Experian's later reporting of the account as current, if any, did not correct the separate historical 90-day-late designation for February 2026. The adverse historical designation remained part of the First Nelnet Tradeline and continued to portray Plaintiff as having previously failed to make required payments.

36. The disputed historical delinquency was material because payment history and serious delinquency designations are information that creditors may consider when evaluating a consumer's creditworthiness and eligibility for credit.

SECOND DEPARTMENT OF EDUCATION/NELNET TRADELINE

37. The second disputed tradeline is a separate Department of Education/Nelnet student-loan account appearing in Plaintiff's Experian credit file (the "Second Nelnet Tradeline").

38. Although the Second Nelnet Tradeline was reported separately from the First Nelnet Tradeline, it was likewise subject to Plaintiff's approved PAYE repayment status during the relevant period.

39. Under the applicable PAYE determination, Plaintiff's required monthly payment on the Second Nelnet Tradeline was $0.

40. Plaintiff did not miss a required payment on the Second Nelnet Tradeline during the applicable PAYE period because no payment greater than $0 was contractually due.

41. Nevertheless, Experian reported the Second Nelnet Tradeline as 90 days late for February 2026 and presented the account as containing potentially negative payment-history information. A true copy of Experian's August 10, 2026 report concerning the Second Nelnet Tradeline is attached as Exhibit B.

42. Experian's 90-day-late designation was inaccurate or materially misleading because Plaintiff's PAYE approval covered the reported period continuously and no past-due monthly payment existed.

43. Nelnet's documentation concerning Plaintiff's repayment status reflected that the account was current, that Plaintiff had no past-due payment, and that no payment was required during the applicable PAYE period.

44. Any later reporting of the Second Nelnet Tradeline as current did not correct the inaccurate historical 90-day-late designation for February 2026.

45. By reporting the same type of serious delinquency on two separate tradelines, Experian caused Plaintiff's credit file to display two adverse student-loan payment histories rather than one, increasing the apparent severity of Plaintiff's payment history.

46. The reporting of two separate 90-day-late designations was material to Plaintiff's creditworthiness because a user reviewing Plaintiff's Experian report could reasonably understand the report to mean that Plaintiff had failed to make required payments on two different federal student-loan accounts.

PLAINTIFF'S DISPUTES TO EXPERIAN

47. After discovering the adverse delinquency information, Plaintiff directly disputed the accuracy of both Nelnet Tradelines with Experian.

48. Plaintiff specifically informed Experian that the 30-, 60-, and 90-day-late payment-history designations were inaccurate because his approved PAYE repayment obligation was $0 during the months Experian reported as delinquent.

49. Plaintiff explained that his successive PAYE approval periods provided continuous coverage and that there was no intervening month in which a payment greater than $0 became due.

50. Plaintiff further explained that he was not disputing the existence of the underlying student-loan principal balances. He was disputing Experian's representation that he had failed to make required monthly payments.

51. In support of his disputes, Plaintiff provided Experian with available documentation from Nelnet, including account-status information and a billing statement reflecting that the accounts were current, that the required payment was $0, and that there was no past-due amount.

52. Plaintiff also provided or identified information concerning his approved PAYE repayment status and the continuation of that repayment status into 2027.

53. Plaintiff asked Experian to conduct a genuine investigation of the payment-history information and to delete or correct the inaccurate delinquency designations on both tradelines.

54. Plaintiff also communicated with Experian by telephone to explain the dispute, confirm that Experian had received the supporting documentation, and emphasize the difference between an outstanding loan principal balance and a past-due monthly payment.

55. Plaintiff's disputes identified the particular accounts, the particular delinquency designations, the relevant repayment program, the required $0 payment, and the supporting Nelnet records.

56. Plaintiff therefore provided Experian with sufficient information to understand and reasonably investigate the disputed inaccuracies.

57. Plaintiff's disputes were neither frivolous nor irrelevant. They concerned specific, material payment-history information that Experian continued to maintain in Plaintiff's consumer file.

EXPERIAN'S REINVESTIGATION AND CONTINUED REPORTING

58. Experian received Plaintiff's disputes and supporting information and conducted or purported to conduct a reinvestigation of the disputed Nelnet Tradelines.

59. After its reinvestigation, Experian issued a result that, in substance, verified or continued the challenged payment-history information rather than deleting or correcting the disputed delinquency designations. A true copy of the CFPB complaint history, including Experian's response describing its reinvestigation and stating that the remaining disputed information was verified as accurate as reported, is attached as Exhibit E.

60. Experian's reinvestigation result did not meaningfully address Plaintiff's central dispute: that a consumer cannot become 30, 60, or 90 days late by failing to pay an amount that was not contractually due.

61. Experian did not reconcile the reported 90-day-late designations with the Nelnet documentation reflecting a $0 required monthly payment, no past-due amount, and current repayment status.

62. Experian also failed to explain how either Nelnet Tradeline could properly be reported as 90 days late for February 2026 when Plaintiff's PAYE payment obligation remained $0 throughout the relevant period.

63. Following Experian's reinvestigation, Plaintiff obtained or reviewed additional Experian reporting showing that the February 2026 90-day-late designations remained associated with both Nelnet Tradelines.

64. Thus, the inaccurate or materially misleading historical delinquency information continued to appear after Experian had received actual notice of the dispute and supporting documentation.

65. Experian's continued reporting indicates that it failed to review and consider all relevant information submitted by Plaintiff or failed to evaluate that information reasonably in relation to the specific payment-history dispute.

66. To the extent Experian transmitted Plaintiff's disputes to Nelnet or another furnisher, Experian failed to ensure that the reinvestigation addressed the precise issue raised by Plaintiff: whether any payment greater than $0 was due during the months reported as delinquent.

67. Experian could not reasonably resolve the dispute merely by confirming that an underlying loan principal balance existed because the existence of principal did not establish that Plaintiff had missed a required monthly payment.

68. Experian failed to correct or delete the disputed information even though the information supplied by Plaintiff contradicted the delinquency designations and required further reasonable investigation.

69. As a result, Experian continued to maintain two materially adverse student-loan payment histories concerning Plaintiff after receiving sufficient information to identify and investigate the alleged inaccuracies.

## HARM AND DAMAGES

70. After Experian began reporting the disputed delinquency information on the two Nelnet Tradelines, Plaintiff observed a substantial decline in his credit score.

71. The two reported 90-day-late designations are serious adverse payment-history entries that caused Plaintiff reasonably to believe that applying for new credit while the inaccurate information remained would likely result in denial, unfavorable terms, or additional damage from unsuccessful credit inquiries.

72. During this period, Plaintiff had a genuine need to seek a business line of credit for his company, Golden Tech and Services, LLC.

73. Plaintiff refrained from applying for the needed business line of credit because Experian continued to display the disputed serious delinquencies and because Plaintiff reasonably expected the inaccurate information to impair the application.

74. Plaintiff decided to postpone the business-credit application until Experian corrected the disputed information so that Golden Tech and Services, LLC would not face an avoidable denial, unfavorable financing terms, or an unnecessary hard inquiry based on an inaccurate credit history.

75. Plaintiff has similarly refrained from seeking personal credit that he otherwise could have sought because the disputed information continues to impair his apparent creditworthiness.

76. As a result, Plaintiff has experienced a continuing loss of access to potentially useful personal and business financing and has been unable to pursue credit opportunities with confidence while the inaccurate information remains unresolved.

77. Plaintiff has spent substantial time and effort obtaining and reviewing credit reports, gathering Nelnet records, preparing and submitting disputes, communicating with Experian, reviewing reinvestigation results, and repeatedly monitoring his credit file.

78. Experian's failure to correct the disputed information has caused Plaintiff frustration, anxiety, worry, inconvenience, loss of sleep, and emotional distress concerning his ability to obtain financing for himself and his business.

79. These injuries remain ongoing because Plaintiff continues to face two adverse historical payment designations and continues to postpone needed personal and business credit applications while awaiting correction.

80. As a direct and proximate result of Experian's conduct, Plaintiff has suffered actual damages, including lost or delayed credit opportunities, loss of the use of potential financing, time and effort devoted to addressing the inaccuracies, and emotional distress, in amounts to be established through discovery and proven at trial.

COUNT I

VIOLATION OF 15 U.S.C. § 1681e(b)
FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE
MAXIMUM POSSIBLE ACCURACY

81. Plaintiff repeats and incorporates by reference paragraphs 1 through 80 as though fully stated herein.

82. Experian is a consumer reporting agency subject to the requirements of the FCRA.

83. Under 15 U.S.C. § 1681e(b), whenever Experian prepares a consumer report, it must follow reasonable procedures to assure the maximum possible accuracy of the information concerning the consumer.

84. Experian prepared credit reports concerning Plaintiff that included materially adverse payment-history information regarding the First and Second Nelnet Tradelines.

85. The reports represented that Plaintiff had become 30, 60, and ultimately 90 days delinquent even though Plaintiff's approved PAYE obligation was $0 during the relevant period and no required monthly payment was past due.

86. The delinquency information was inaccurate or, alternatively, materially misleading because it created the false impression that Plaintiff had failed to make required monthly payments on two separate federal student-loan accounts.

87. The accuracy of the disputed information was objectively and readily verifiable by comparing the reported payment history with Plaintiff's PAYE approval information, Nelnet account status, required monthly payment, and past-due amount.

88. Experian failed to follow reasonable procedures to assure maximum possible accuracy by failing to distinguish between an outstanding loan principal balance and a delinquent required payment and by failing to reconcile the serious delinquency designations with the underlying repayment-status information.

89. Experian's procedures were additionally unreasonable because Experian continued to maintain the disputed adverse payment histories after Plaintiff notified Experian of the inaccuracies and supplied documentation contradicting the reported delinquency designations.

90. It was reasonably foreseeable that reporting two 90-day student-loan delinquencies would damage Plaintiff's apparent creditworthiness, discourage or impair his ability to seek credit, and cause the other injuries alleged in this Complaint.

91. Experian's failure to follow reasonable accuracy procedures was negligent and, upon information and belief, willful.

92. As a direct and proximate result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries and damages described above.

COUNT II

VIOLATION OF 15 U.S.C. § 1681i
FAILURE TO CONDUCT A REASONABLE REINVESTIGATION

93. Plaintiff repeats and incorporates by reference paragraphs 1 through 92 as though fully stated herein.

94. Plaintiff directly notified Experian that the payment-history information associated with the First and Second Nelnet Tradelines was inaccurate or materially misleading.

95. Plaintiff's disputes were sufficiently detailed to identify the accounts, the disputed delinquency designations, the relevant reporting period, the approved PAYE repayment status, the $0 required monthly payment, and the absence of a past-due amount.

96. Plaintiff also supplied relevant supporting information from Nelnet that contradicted Experian's reporting of 30-, 60-, and 90-day delinquencies.

97. Under 15 U.S.C. § 1681i(a), Experian was required to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to review and consider all relevant information submitted by Plaintiff.

98. Experian failed to conduct a reasonable reinvestigation because it did not meaningfully evaluate whether a 90-day-late designation could be accurate when Plaintiff's required monthly payment was $0 throughout the relevant period.

99. Experian failed to reconcile the delinquency designations with the documents showing Plaintiff's approved PAYE status, current account status, $0 required payment, and absence of a past-due amount.

100. Experian's confirmation of the existence or amount of the underlying loan principal, if any, did not resolve Plaintiff's separate dispute concerning whether a required monthly payment had been missed.

101. Experian failed to review and consider all relevant information submitted by Plaintiff or otherwise failed to use reasonable procedures to evaluate that information in connection with the reinvestigation.

102. After completing or purporting to complete its reinvestigation, Experian failed to delete or appropriately modify the inaccurate, incomplete, materially misleading, or unverifiable delinquency information.

103. Experian instead continued maintaining the February 2026 90-day-late designations on both Nelnet Tradelines after receiving actual notice of Plaintiff's dispute and supporting documentation.

104. Experian's reinvestigation was therefore unreasonable and failed to satisfy the requirements of 15 U.S.C. § 1681i.

105. Experian's noncompliance was negligent and, upon information and belief, willful.

106. As a direct and proximate result of Experian's violation of 15 U.S.C. § 1681i, Plaintiff suffered the injuries and damages alleged above.

NEGLIGENT AND/OR WILLFUL NONCOMPLIANCE

107. Plaintiff repeats and incorporates by reference paragraphs 1 through 106 as though fully stated herein.

108. Experian's violations of 15 U.S.C. §§ 1681e(b) and 1681i were, at minimum, negligent within the meaning of 15 U.S.C. § 1681o.

109. Experian failed to exercise reasonable care in preparing, maintaining, reviewing, and reinvestigating the payment-history information associated with the two Nelnet Tradelines.

110. A consumer reporting agency exercising reasonable care would have evaluated whether a consumer with a required monthly payment of $0 could accurately be reported as 30, 60, or 90 days late during the same repayment period.

111. Experian's failure to make that basic comparison, despite receiving Plaintiff's specific explanation and supporting documentation, caused the inaccurate or materially misleading information to remain in Plaintiff's credit file.

112. Alternatively, Experian's conduct was willful within the meaning of 15 U.S.C. § 1681n because Experian knowingly or recklessly disregarded its statutory obligations.

113. Experian had actual notice of the specific inaccuracies through Plaintiff's detailed disputes, supporting Nelnet documentation, and telephone communications.

114. Experian was informed that the existence of an outstanding loan principal balance did not establish that Plaintiff had missed a required monthly payment and that Plaintiff's approved payment obligation was $0 during the relevant period.

115. Despite that notice, Experian continued maintaining two 90-day-late designations without meaningfully reconciling them with the repayment-status information supplied by Plaintiff.

116. Continuing to report two serious delinquencies under these circumstances created an unjustifiably high and obvious risk that Experian was violating Plaintiff's rights under the FCRA.

117. Experian either knew of that risk or acted in reckless disregard of it by failing to correct, delete, or reasonably reinvestigate the disputed information.

118. Experian's conduct was more than an isolated clerical mistake because the inaccurate or materially misleading information appeared on two separate tradelines and remained after Plaintiff's supported disputes and Experian's purported reinvestigation.

119. Under 15 U.S.C. § 1681o, Plaintiff seeks actual damages caused by Experian's negligent noncompliance, together with recoverable costs and any other relief permitted by law.

120. To the extent Experian's conduct is determined to be willful, Plaintiff seeks actual damages or statutory damages, punitive damages, recoverable costs, and any other relief authorized by 15 U.S.C. § 1681n.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aboubacar Diawara respectfully requests that the Court enter judgment in his favor and against Defendant Experian Information Solutions, Inc., and award the following relief:

A. A judgment declaring that Experian violated the Fair Credit Reporting Act as alleged in this Complaint;

B. Actual damages caused by Experian's negligent and/or willful noncompliance, in an amount to be determined through discovery and proven at trial, under 15 U.S.C. §§ 1681n and 1681o;

C. Statutory damages for willful noncompliance in the amount permitted by 15 U.S.C. § 1681n;

D. Punitive damages in an amount sufficient to punish and deter willful noncompliance, as permitted by 15 U.S.C. § 1681n;

E. Taxable costs and, if applicable, reasonable attorney's fees as authorized by 15 U.S.C. §§ 1681n and 1681o;

F. Prejudgment and post-judgment interest to the extent permitted by law;

G. To the extent authorized by applicable law, appropriate declaratory or equitable relief concerning Experian's continued maintenance of the inaccurate or materially misleading delinquency information; and

H. Such other and further legal relief as the Court determines to be just and proper.

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
August 17, 2026

Respectfully submitted,

Aboubacar Diawara
Plaintiff Pro Se
223 West 131st Street, Apt. 1F
New York, New York 10027
Telephone: (646) 250-1201
Email: diawaraaboubacar130@gmail.com